PARK *v.* CALLAWAY *et al.*

1. There is no such officer created by law as a clerk of a justice's court.
2. If a person employed by a justice of the peace to do clerical work, and called his clerk, informed an attorney that his case had not been set and would not be tried at that term of court, and this was erroneous, and the case was in fact tried and a judgment rendered, although counsel and his client relied on the information so given, this would not furnish ground for a court exercising equitable jurisdiction to enjoin the levy of an execution issued thereon and to cancel the fi. fa. and reinstate the case, there being no allegation that the plaintiff or his counsel in any way misled or deceived the defendant or his counsel.
3. If a justice of the peace enters his judgment on the docket, it is not void because unsigned. But an entry purporting to be a judgment, entered merely by a person employed by the justice of the peace to do clerical work, and known as his clerk, which judgment is not signed by the justice, is not a judgment, but a mere memorandum.
4. If an execution issued on such a purported judgment is levied, it may be met by an affidavit of illegality. Injunction is not necessary to prevent it from proceeding.

Argued February 19,—Decided April 12, 1907.

Equitable petition. Before Judge Pendleton. Fulton superior court. March 24, 1906.

Park filed his petition against Mrs. W. A. Callaway, her attorneys, and the constable of a justice's court, alleging, in brief, as follows: Mrs. Callaway brought a suit in a justice's court against Park. At the term to which it was returnable, a bill of particulars was demanded, and the case was continued. Park pleaded to the suit. On the next date for the convening of the justice's court the attorney for Park had a case set in the superior court of another county, which he desired to attend. Before the opening of court

he applied to "the clerk in charge of the dockets and trial calendars of said N. P. and J. P. court, and requested said clerk to have said case set down for some fixed day late in the term." The "clerk" promised to have the case so set, and made a memorandum on the original summons. It was the custom of the presiding justice in that district not to try cases or render judgments on the first day of the term, where pleas had been filed, but to call the docket on that day and assign cases for trial for different days during the term. The justice had a call on that day. Upon the return of Park's attorney from the trial of his case in another county, he asked the "clerk" what day the case was set for trial, and was informed by him, after examining the docket and trial calendars, that the case had not been assigned for trial, and that it could not come up for trial prior to the next term, during the following month. The attorney informed his client of this fact, and they relied upon it. On the next court day the attorney called adverse counsel by telephone and inquired at what time they desired the case set. He was then informed that the case had in fact been assigned for trial at the previous term, and that judgment had been rendered against the defendant therein. The defendant had a good defense to the action, which he was prevented from making, by reason of his reliance upon the information given him by the "clerk" of the justice. The judgment is a cloud upon the title to his property. One of counsel in that case has refused to delay the enforcement of the execution issued on the judgment so rendered, and has placed it in the hands of a constable of the district, with instructions to levy it upon the property of the present petitioner (then defendant). On information and belief, it was alleged that the judgment was not entered on the docket by the justice of the peace, nor had it ever been signed by him; but the justice made a memorandum, not on his docket, but on the trial calendar or list of cases, in the words "Judgment for plff.," stating no amount and unsigned; and what purports to be a judgment was subsequently written out on the docket by "the clerk." This was not signed by the justice. The prayer was, for injunction to prevent the enforcement of the execution by levy or otherwise; that the judgment be set aside; that the execution be quashed; that the case be opened and ordered to trial on its merits; and for general relief and process. On demurrer the petition was dismissed.

*Walter R. Daley,* for plaintiff.

LUMPKIN, J. (After stating the foregoing facts.)

1, 2. The law has not created any such officer as a clerk of a justice of the peace. If the justice employs a person to assist him in clerical work, such person is merely a scrivener or employee, not a public official. Inquiries made of such a person as to the setting of cases, and information given by him that a case had not been set for trial during a given term, and would not be tried until a later term, do not amount to action by the justice or the justice's court. In *Ballard Transfer Co.* v. *Clark,* 91 *Ga.* 234, it was held that even if the magistrate himself on a court day, but when not presiding, erroneously answered a question as to a case having been called, and counsel making the inquiry shaped their conduct accordingly, they took the risk of the information being correct. And this was followed in *Watkins* v. *Ellis,* 105 *Ga.* 796; and *Johnson* v. *Driver,* 108 *Ga.* 595. A fortiori would this be true of a scrivener or clerical assistant employed by the magistrate in connection with his work. The writer must admit that to him the rule laid down in the cases referred to seems somewhat stringent. A justice transacting business as such in his office and discharging the business thereof must necessarily be often relied on by litigants for information as to the time when cases are to be tried. They can not sit by and watch him throughout the term lest his statement to them should be erroneous. They can not interrupt him while he is presiding in other cases, to ask questions about theirs. It appears that the justice whose action is complained of in this case had public calls at fixed times, when he set cases. But it is probable that in many districts this is not done. In such districts how shall a litigant know when to be present with his witnesses, except by asking the justice? True, a conversation on the street or away from his office might be different; but while he is in his office and engaged in his business as a justice, it seems rather harsh to say that parties can not rely on what he tells them as to their cases, and have no remedy if the statements are erroneous. The justice would not make such a misstatement intentionally. If he did so accidentally, he would no doubt correct it if he could. Courts of record may entertain a motion during the term to reopen a judgment. Or, for proper cause, a motion to set aside a judgment may be made within the period fixed by the statute. But there is no such

power of correction in a justice's court. If there is no error of law which will authorize a reversal, and the time for an appeal has passed, relief must be sought in equity or nowhere. Still, some of the decisions cited are by the entire bench and are controlling.

3. If a justice of the peace enters his judgment on his docket, it is not void though he does not sign it.' *Gunn* v. *Tackett,* 67 *Ga.* 725. But this is not the case with an entry on the docket by a scrivener or "clerk." Such an entry, not signed by the magistrate, is not a judgment; nor has it the effect of one. An execution issued upon it is without legal basis. The making of a mere memorandum on a separate list of cases, other than the docket, of "Judgment for plff.," was not the entry of a lawful judgment on which an execution could be based. Nor did such memorandum render the judgment afterward written up by the "clerk" valid.

4. It is alleged that the execution is about to be levied on the property of the defendant therein, and injunction is sought to prevent this, and a decree is prayed to cancel the execution and reinstate the case. If such an execution is levied, it can be met by affidavit of illegality, and injunction is not necessary to resist it. *Hart* v. *Lazaron,* 46 *Ga.* 396; *Ansley* v. *Glendenning,* 56 *Ga.* 286. A case may be conceived where the legal remedy would not be as adequate as that in equity; as, where no effort was being made to enforce or levy the execution based on a void judgment; but it stood as a menace to the property of the defendant, and an obstruction to his disposing of it, and where, perhaps, equitable proceedings would be proper to cancel it. Whether insolvency and other reasons might create a right to equitable relief need not be discussed. Such is not the case here. See also *House* v. *Oliver,* 123 *Ga.* 784.

*Judgment affirmed. Fish, C. J., absent. The other Justices concur.*